USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-27-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. CYRIL KENDALL, The World's Most Unique Man,

*Plaintiff*,

-against-

ANDREW M. CUOMO, BRIAN FISCHER, WILLIAM J. CONNOLLY, A. MAUME, A. PELC, K. KLEIN, JOSEPH R. PIERSMA, JUSTIN M. SORENSON, NURSE PETERSON, MR. KURTZWORTH, DEBRA HIGGS, C.O. GRIFFIN

*Defendants*.

12 Civ. 3438 (ALC)(RLE)

**ORDER AND OPINION**

**ANDREW L. CARTER, JR., United States District Judge:**

Defendants Governor Andrew Cuomo, Commissioner Brian Fischer of the New York State Department of Corrections and Community Supervision ("DOCCS"), Officer Justin Sorensen and Nurse Peterson of Fishkill Correctional Facility (the "Fishkill Defendants") and Acting Superintendent of Security Kurtzworth, Debra Higgs and Correction Officer Griffin of Orleans Correctional Facility (the "Orleans Defendants") move to dismiss the Amended Complaint.[1] The Defendants challenge the Plaintiff Cyril Kendall's amended complaint on two grounds, citing Kendall's failure to exhaust administrative remedies under the Prisoner Litigation Reform Act (PLRA) and on the ground that his claims are not plausible.

The Amended Complaint filed on June 28, 2012 alleges excessive use of force, alleged "assault to cause bodily harm in retaliation" (Claims 1 and 2); denial of due process in

[1] To date, Officer Joseph Piersma has not been successfully served with the summons and amended complaint. As Plaintiff is required to serve the complaint within 120 days of filing, the Amended Complaint is dismissed without prejudice as to Officer Piersma. See Fed. R. Civ. P. 4(m).



- Copies mailed by Chambers.

involuntary protective custody (Claim 3), denial of medical care (Claim 5); unconstitutional conditions of confinement at Fishkill in involuntary protective custody (Claims 3, 4 and 6); failure to protect and give equal protection to Plaintiff in retaliation (Claim 7); inciting retaliation alleging that Defendant Fisher provided the information to the Daily News for publication (Claim 8) (Am. Compl. ¶ 22); cruel and unusual punishment imposed in retaliation (namely, the assault pleaded in earlier claims and "excessive sentence imposed under an incorrect indictment and wrongful imprisonment) (Claim 9); retaliatory transfer from Fishkill to Orleans and mistreatment through starvation and denial of medical treatment at Orleans (Claim 10); and for use of a false, fake, and non-existent January 14, 2009 judgment"[2] created to commit fraud and deceit (Claim 11).

For the reasons stated below, the motion to dismiss (Dkt. No. 43) is granted in part and denied in part.[3]

## BACKGROUND

### I. Procedural History

On September 16, 2003, Kendall was convicted of one count each of second and third degree grand larceny, first degree offering a false instrument for filing, and second degree criminal possession of a forged instrument. He was sentenced to 11 to 33 years in prison. His

---

[2] The judgment referred to in Claim 11 is a Report and Recommendation by the Honorable Magistrate Judge Andrew Peck, dated January 14, 2009, recommending that Kendall's habeas petition be denied and further recommending that the stay of Kendall's removal be lifted. See Kendall v. Connolly, 08-CV-6785(CM)(AJP), 2009 WL 162899 (S.D.N.Y. Jan. 14, 2009).

[3] Because Defendants Connolly, Maume, Pelc and Klein have not been served the Amended Complaint but have been served the original complaint, their motion to dismiss (Dkt. No. 21), which only included Claims 1-9 and only sought dismissal for failure to exhaust, is DENIED on the merits consistent with this Order.

conviction stems from submission of false identification documents of a non-existent son to defraud charities of money intended for the families of victims of the September 11, 2001 World Trade Center attacks.

Kendall challenges the validity of this conviction because the case against him was under 3565/2002. According to Kendall: the court clerk called the record indictment for 3525/2002 on the third day of trial and "a new case began against Cyril Kendall, under indictment #3525/2002. The case of indictment #3565/2002, against Cyril Kendall, ended, dismissed and or discontinued by the Court on July 21, 2003 when the Court stopped taking any further testimony in that case." (Am. Compl ¶ 24(I)). Therefore, the conviction was not entered on the proper indictment.

Kendall appealed his sentence and his appeal was denied. Kendall then filed for habeas corpus protection and during the pendency of that petition, the Honorable Magistrate Judge Andrew Peck ordered a stay of plaintiff's removal from the United States on November 21, 2008. See Kendall v. Connolly, 08-CV-6785 at Dkt. No. 12 (Trial Order). On January 14, 2009, Peck recommended that the habeas petition be denied and the stay be lifted. See Kendall v. Connolly, 08-CV-6785(CM)(AJP), 2009 WL 162899 (S.D.N.Y. Jan. 14, 2009). On February 2, 2009, the Honorable District Judge Colleen McMahon adopted the report in its entirety and vacated the stay of removal. See Kendall v. Connolly, 08-CV-6785 at Dkt. No. 26 (Trial Order).

II. Factual Allegations

Kendall's allegations are based on the possibility of retaliation for publication of an article in the New York Daily News on October 3, 2011. Specifically, the article recounted Kendall's conviction for grand larceny and fraud for "bilk[ing] kind-hearted charities out of $160,000 by concocting a fictitious son he claimed died in the 2001 terrors [sic] attack on the World Trade Center." (Am. Compl. Ex. F). The article also stated that Kendall was imprisoned

at Fishkill Correctional Facility ("Fishkill") and was being granted early release on the condition that he be deported to his native Guyana. Kendall alleges that even the publication of this article was prompted by Defendants who on September 13, 2011 ordered Kendall to accept conditional parole for deportation only. (Am. Compl. ¶¶ 22, 25(D), (E)).

Noting that he would likely face retaliation if he stayed among the general population, Fishkill officials put Kendall into protective custody. However, Kendall opposed the transfer. Kendall alleges several instances of excessive use of force on October 3, 2011. First, in transporting Kendall to office of Defendant Sergeant Klein, Defendant Officers Piersma and Sorenson kicked and punched plaintiff, who was still handcuffed. (Am. Compl. ¶¶ 16, 16(B)). Once in Klein's office, Kendall alleges that he reported the attack, but Klein allegedly told him that "you are now going to face retaliation for your crime [expletive] based on this article. Kendall what you claimed that the officers did to you on your way down here is no big deal." (Am. Compl. ¶ 16(D)). Klein further stated that he was ordered to put Kendall in involuntary protective custody to save his life. (Am. Compl. ¶ 16(E)). Klein allegedly also told Kendall that Governor Cuomo, Commissioner Fischer and Superintendent Connolly had ordered Klein to advise Kendall to "Sign the [expletive] piece of paper and leave the Country. Go back to where you came from."[4] (Id.)

Kendall still refused to accept involuntary protective custody and was immediately handcuffed behind his back and taken to the mess hall where Klein, Piersma and Sorensen allegedly slammed him into the wall, punched him in the ribs and in the process dislocated his

---

[4] It is unclear whether the papers he was directed, and refused, to sign were papers to enter protective custody or papers accepting deportation in exchange for release from prison.

right shoulder. Kendall alleges that he was denied medical care on October 4, 2011 and continues to suffer pain because he was not properly treated. In a letter dated October 16, 2011, Kendall reported the alleged physical abuse and denial of medical care to Superintendent Connolly. (Am. Compl. ¶ 19).

Kendall had a Tier III disciplinary hearing held over two days, on October 11 and October 27, 2011. At the October 11 hearing, Kendall alleges that the hearing officer, M. Levine, allegedly told him: "I am not a Federal Judge, only a hearing officer in the Department of Corrections. We are not a Federal Court here. You are making claims of immigration and crime against the corrections staff. I and this hearing do not have jurisdiction over immigration and criminal matters, or even over Governor Cuomo. 'Kendall', you are making very serious allegations here. You are reporting very serious injuries. None of which is administrative in nature. You will have to take these matters to the Federal Courts." (Kendall Opp. ¶¶ 11-12). At this Tier III hearing, Kendall alleges he was not allowed to continue his testimony and the hearing officer recommended that Plaintiff be put into protective custody. (Am. Compl. Ex. E).

Kendall was placed in involuntary protective custody between October 3 and November 15 at Fishkill. Once in involuntary protective custody, Kendall alleges further mistreatment including food being thrown on the floor so that he had to eat off the floor to avoid starvation; cold temperatures; and bright lights on 24 hours day so that he could not sleep. (Am. Compl. ¶¶ 20, 21).

On or about November 15, 2011, Kendall was taken out of involuntary protective custody at Fishkill and transferred to Orleans Correctional Facility ("Orleans") in western New York. Kendall alleges this transfer was retaliatory At Orleans, Kendall alleges that the Orleans Defendants purposely placed him with cellmates with communicable diseases, prevented him

from eating in the mess hall and would not accept a doctor's note allowing him to use his own utensils because of an allergy to the provided plastic utensils. Kendall also alleges that because he was not allowed to eat in the mess hall, on at least two occasions, he was forced to find his own food. (Am. Compl. ¶¶ 24(A)-(P)).

DISCUSSION

I. Standard of Review on Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

On a motion to dismiss, the court will accept the plaintiff's allegations as true and must draw all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)). However, the court need not accept allegations that are merely conclusions of law. Kassner, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action"). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled

to offer evidence to support his claims." Fernandez, 471 F.3d at 51 (internal quotation marks and citation omitted).

Dismissal for failure to state claim on which relief could be granted is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996). A pleading alleging civil rights violations that is challenged by a motion to dismiss should be liberally construed with a view to achieving substantial justice. See, e.g., Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (citations omitted). This is especially so when filed by a *pro se* litigant. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); Elliott v. Bronson, 872 F.2d 20, 21 (2d Cir. 1989) ("[C]ourts must construe *pro se* complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel.").

II. Administrative Exhaustion Under the PLRA

Defendant first seeks dismissal for Kendall's failure to exhaust administrative remedies before bringing this case in federal court. In relevant part, the Prisoner Litigation Reform Act ("PLRA") reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C.A. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 594 U.S. 199, 211 (2007). Non-exhaustion is an affirmative defense. Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009). Therefore, "[d]ismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate . . . where non-exhaustion is apparent from the fact of the complaint." Roland v. Smith, No. 10 Civ. 9218 (VM), 2012 WL 601071, at *2 (S.D.N.Y. Feb. 33, 2012).

The Second Circuit interprets PRLA to require "'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)) (emphasis in original). Generalized complaints may not be used in lieu of the process set forth by BOP to address grievances. See Johnson v. Killian, 680 F.3d 234, 239 (2d Cir. 2012) (rejecting the proposition that "generalized complaints regarding the conditions of an inmate's confinement will suffice to shortcut the administrative remedy process"); Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) ( "[A]fter Woodford, notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."") (quoting Woodford, 126 S.Ct. at 2388).

While a court may grant a motion to dismiss a complaint for a plaintiff's failure to exhaust administrative remedies, it must first conduct a three-step inquiry to determine whether to excuse the failure to exhaust. The Court must ask: (1) whether the administrative remedies were, in fact, available to the prisoner; (2) if those remedies were available, whether the defendants forfeited their non-exhaustion defense by failing to raise or preserve it or whether they may be estopped from raising this defense if their own actions inhibited the prisoner's ability to exhaust available remedies; and, finally, (3) whether "special circumstances" have been plausibly alleged that justify the prisoner's failure to exhaust. See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (citations omitted). Special circumstances may excuse an inmate from exhausting his administrative remedies where circumstances "might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano v. Goord,

380 F.3d 670, 678 (2d Cir. 2004); Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (remanding to district court for determination of "facts that give rise to special circumstances that may justify [plaintiff's] failure to comply with the exhaustion requirement" where plaintiff alleged that he attempted to file a grievance but was advised the issue was non-grievable).

Plaintiff alleges that based on Levine's statement, he believed that his immigration and criminal claims against the corrections staff were non-grievable. In rebuttal, Defendants do not admit or deny that this statement was made at the hearing. They only contend that at least some of Kendall's claims "are clearly within the purview of the DOCCS grievance system." (Defs. Reply at 2).

Kendall contends that "[t]he claims in this action are not grievable, at the administrative correctional facility level. However, the Superintendent William J. Connolly was informed directly about them." (Am. Compl. ¶ 27). Kendall does not explain in his complaint why the claims are not grievable, but in his opposition, Kendall quotes Hearing Officer M. Levine's statement to him at the hearing:

> "I am not a Federal Judge, only a hearing officer in the Department of Corrections. We are not in a Federal Court here. You are making claims of immigration and crime against the corrections staff.
>
> I and this hearing do not have jurisdiction over immigration and criminal matters, or even over Governor Cuomo. Kendall, you are making very serious allegations here. You are reporting very serious injuries. None of which is administrative in nature. You will have to take these matters to the Federal Courts."

(Kendall Opp. ¶¶ 11-12; see also id. ¶¶ 21-22).

Here, special circumstances have been alleged that justify Kendall's failure to exhaust administrative remedies. In particular, Kendall contends that the hearing officer M. Levine

informed him that he was "not a Federal Judge, only a hearing officer in the Department of Corrections. We are not in a Federal Court here." This statement may have convinced Kendall that he could only bring his claims of "immigration and crimes against the correction staff" in federal court. Indeed, although Kendall submitted a letter to the superintendent at Fishkill about the alleged assaults and lack of medical attention, in Kendall's mind, the inaction from the institution may well have jibed with his belief that his claims were not eligible for the grievance process.

This Court finds that "while [Kendall] was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse." Giano, 380 F.3d at 678; Tolliver v. Ercole, No. 08 Civ. 4023 (DAB) (KNF), 2009 WL 3094870, at *5 (S.D.N.Y. Sept. 9, 2009) (Report and Recommendation), adopted, 2010 WL 1222053 ("This assertion militates against granting the motion to dismiss for failure to exhaust, since, at this juncture, the Court must draw all reasonable inferences in the plaintiff's favor, which includes an inference that, as the plaintiff alleges, he presented the issues raised in this action to the [Hearing Officer] and was informed that such issues were not grievable.") (internal citation omitted).

Further, it is unclear whether the Defendants should be estopped from raising a failure to exhaust defense because of Mr. Levine's alleged statements. For both of these reasons, the Defendants' motion to dismiss the complaint for failure to exhaust is denied.

III. Plausibility of Kendall's Claims

On the merits, Defendants only allege that plaintiff's claims are not plausible. But Kendall alleges sufficient facts to support his claims. Even Twombly recognizes that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. 1955, 1965 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (internal quotation marks omitted). Given the liberality required on considering a pro se plaintiff's complaint, Defendants' generic argument that the claims are not plausible must fail.

The Court, however, does find dismissal of Claim 11 appropriate based on determinations in other court proceedings that bear directly on Kendall's claim. While the Court must accept as true all alleged facts, the Court can take judicial notice of the fact that the "false, fake and non-existent January 14, 2009 judgment" is an entirely valid court order. See Kendall v. Connolly, 2009 WL 162899, at *7 (S.D.N.Y. Jan. 14, 2009) (Report and Recommendation). By memo endorsement dated February 2, 2009, the Honorable Coleen McMahon adopted the Report and Recommendation and vacated the stay of Kendall's removal: "The Court having reviewed the objections (which are utterly without merit), adopts the Report as its opinion and directs the Clerk of the Court to dismiss the petition. The stay of removal that was obtained ex parte from Judge Peck is vacated effective immediately. Close file." Kendall v. Connolly, 1:08-cv-6785 at Dkt. No. 26; see also id. at Dkt. No. 22 ("The Court has by separate memo endorsement denied the application [for writ of habeas corpus] and ordered that the petition be dismissed.") Thus, contrary to Kendall's complaint, any order by the State Defendants for his conditional parole for deportation only if based on the January 14 Report and Recommendation and February 2 memo endorsement, would have been valid, not based on fraud and deceit. Thus, this claim is frivolous and should be dismissed.

Furthermore, to the extent, Kendall seeks to rehash his argument that his underlying conviction is wrongful and illegal imprisonment because obtained under a different indictment number (see Am. Compl. at 26(B)-(P)), this Court will not allow him to do so to support the

claims in his Amended Complaint. At least two other courts have recognized the speciousness of his conviction-by-phantom-indictment theory. See Kendall v. Connolly, 2009 WL 162899, at *7 (S.D.N.Y. Jan. 14, 2009) (deferring to state court judge's factual determination that a typographical error "spawned Kendall's bizarre, conspiratorial theory of a dummy indictment" and denying claim as frivolous).

CONCLUSION

With the exception of Claim 11, Defendant's motion to dismiss the Amended Complaint is denied so that a factual record may be developed. The motion to dismiss the Amended Complaint (Dkt. No. 43) is DENIED for Claims 1-10 and GRANTED for Claim 11. Because no facts have been established to date, Kendall's motion for summary judgment (included with his affirmation in opposition to defendants' motion to dismiss) (Dkt. No. 53) is also DENIED without prejudice to renew once discovery has been completed.

SO ORDERED.

Dated: September 27, 2013
New York, New York

ANDREW L. CARTER, JR.
United States District Judge