USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _9|19|2017_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

DR. CYRIL KENDALL, The World's                    :
Most Unique Man,
             *Plaintiff*,                         :          1:12-cv-3438 (ALC)(RLE)

    -against-                                       :          **OPINION AND ORDER**

ANDREW M. CUOMO ET AL,                         :

           *Defendants*.                      :

-------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

The Court has moved *sua sponte* to reconsider its earlier denial of Defendants' motion for

summary judgment. This action involves a suit by Plaintiff against various state and corrections

officials and staff for excessive use of force, denial of medical care, and unconstitutional

conditions of confinement and retaliation. In light of intervening change in law on the

exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA"), the

Court now finds that Plaintiff's suit is barred, and therefore, Defendants' motion is granted

## BACKGROUND

*Pro se* Plaintiff Cyril N. Kendall, a former inmate in the custody of New York State

Department of Corrections and Community Supervision ("DOCCS"), brought this action

pursuant to 42 U.S.C. § 1983, claiming constitutional violations for excessive use of force, denial

of medical care, and unconstitutional conditions of confinement and retaliation. All of the

violations are alleged to have occurred in October 2011 while Kendall was incarcerated at

Fishkill Correctional Facility ("Fishkill") and from November 28, 2011 to at least June 2012

while incarcerated at Orleans Correctional Facility ("Orleans"). On October 26, 2012,

Defendants Governor Andrew Cuomo, Commissioner Brian Fischer of DOCCS, Officer Justin

Sorensen, and Nurse Peterson (the "Fishkill Defendants") together with Acting Superintendent of

Security Kurtzworth, Debra Higgs, and Corrections Officer Griffin of Orleans Correctional

Facility (the "Orleans Defendants") moved to dismiss the Amended Complaint. On September

27, 2013, the Court denied the motion to dismiss, holding that "special circumstances" excused

Kendall from exhausting his administrative remedies. *Kendall v. Cuomo*, No. 12 Civ. 3438,

2013 WL 5425780 (S.D.N.Y. Sept. 27, 2013).

On May 9, 2014, Defendants moved for summary judgment on grounds that Kendall

failed to exhaust his administrative remedies with respect to his claims. By Order dated January

8, 2015 (ECF No. 119), the Court denied Defendants' motion, specifically finding that there

were issues of fact that warranted a hearing on Defendants' affirmative defense of non-

exhaustion. A hearing was initially scheduled for March 3, 2015, but due to Kendall's health

issues, it was rescheduled multiple times before ultimately being rescheduled for October 5,

2016. Kendall refused to appear for the hearing for reasons unrelated to his health. ECF No.

136. In light of the Supreme Court's decision in *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016)

regarding the exhaustion of administrative remedies under the PLRA, the Court ordered

additional briefing on whether Kendall exhausted his administrative remedies under the

framework set forth in *Ross*. After carefully reviewing the parties' submissions, the Court issued

an order to Kendall to show cause on why the action should not be dismissed pursuant to *Ross*.

Kendall failed to respond.[1] For the reasons stated below, Defendants' motion for summary

judgment is granted.

---

[1] Defendants have informed the Court that Kendall was deported in mid to late June 2017.

## STANDARD OF REVIEW

Federal district courts have the inherent power to reconsider interlocutory orders before they become final. *See United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1983); *Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000). The denial of a motion for summary judgment is an interlocutory order, and thus the district court is free to reconsider and reverse its decision for any reason it finds sufficient and may do so *sua sponte*. *See Nabisco v. Warner-Lambert Co.*, 32 F. Supp. 2d 690, 694-95 (S.D.N.Y. 1999). *Sua sponte* reconsideration is appropriate where, *inter alia*, there is an intervening change in the applicable law. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 1:11-cv-3238, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015). In light of the intervening change of law under *Ross*, the Court exercises its inherent power in this case to reconsider its prior denial of Defendants' motion for summary judgment.

The party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted). In deciding a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities

and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

Where the plaintiff relies largely on his own testimony, much of which is incomplete and contradictory in some respects, "it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of N. Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (internal citation omitted). "Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Id.*

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (quoting *Tracy v. Freshwater,* 623 F.3d 90, 101 (2d Cir. 2010)) (alteration omitted). This is so "particularly where motions for summary judgment are concerned." *Id.* (quoting *Jackson v. Fed. Express,* 766 F.3d 189, 195 (2d Cir. 2014)). However, even *pro se* plaintiffs must offer some evidence that would defeat a motion for summary judgment. *Saldana v. Local 32B–32J Serv. Emps. Int'l Union,* 03 Civ. 1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005).

## DISCUSSION

Defendants argue that summary judgment should be granted because Plaintiff has failed to exhaust his administrative remedies as required by the PLRA and does not qualify for any of the textual exceptions under *Ross.* The Court agrees.

In relevant part, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). Exhaustion under the PLRA must be "proper," which "means using all steps that the agency holds out, and doing so *properly* so that the agency addresses the issues on the merits." *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (emphasis in original) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). "Untimely or otherwise procedurally defective administrative grievance[s] or appeal[s]" fail to satisfy the PLRA's exhaustion requirements. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

In this Court's denial of Defendants' motion to dismiss, the Court held that special circumstances excused Kendall's failure to exhaust his administrative remedies when Kendall reasonably believed that Department of Corrections regulations foreclosed any administrative remedies. The Court found that Hearing Officer Levine's statement that Kendall needed to bring his claims in federal court justified Kendall's belief. *Kendall*, 2013 WL 5425780 at *4. Since then, the Supreme Court in *Ross v. Blake* has overruled the "special circumstances" exception to the exhaustion requirement. *See Williams*, 829 F.3d at 123. The proper inquiry frames the issue "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

Under *Ross*, the Supreme Court describes three situations where administrative remedies are unavailable. *Ross*, 136 S.Ct. at 1858-1859. First, an administrative remedy is unavailable

"when . . . it operates as a simple dead end." *Id.* at 1859. Second, the same is true when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," which would be the case when "some mechanism exist[ed] to provide relief, but no ordinary prisoner [could] discern or navigate it." *Id.* Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," an administrative remedy is unavailable. *Id.*

Fishkill

Of the three situations where administrative remedies are unavailable, only the third situation could apply here. Administrative remedies are not available if prison officials "interfere[] with an inmate's pursuit of relief" by, for example, misinforming an inmate as to the applicability of the grievance process to the inmate's claims. *Ross*, 136 S.Ct. at 1860; *see also Veloz v. New York*, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y. 2004) (noting that "[w]hen an inmate's reasonable attempts to exhaust administrative remedies are impeded by a correctional officer" the remedy is unavailable.). Consequently, the issue here is not whether it was reasonable for Kendall to believe that he had exhausted his administrative remedies in light of Officer Levin's direction to Kendall to not file a grievance but whether Hearing Officer Levin's direction to Kendall *interfered* with Kendall's pursuit of administrative remedies. The Court finds that Levin's direction did not.

Kendall failed to file any written grievance at Fishkill. Previously, Kendall had appealed fourteen grievances to the Central Office Review Committee. Hale Decl., Ex. A. Instead, Kendall testified that he believed writing letters to the superintendents of the facilities qualified

as filing a grievance.[2] Either the day of or soon after the day of the hearing where Levin told him to go to federal courts with his claims,[3] Kendall submitted a letter dated October 16, 2011 to the Superintendent describing the use of excessive force against him and lack of medical attention received by him. Kendall Opp'n Aff. (ECF No. 141) Ex. A. Kendall considered this letter to be his attempt to file a grievance. Kendall Dep. Tr. 37:16-38:3. Kendall also received a response dated November 4, 2011 from a corrections officer addressing his complaint. Kendall Opp'n Aff. (ECF No. 141) Ex. B. Thus, Levine's order did not impede Kendall from exhausting his remedies; instead, Kendall filed a grievance improperly. *See Riles v. Buchanan*, 656 Fed. App'x 577, 580-81 (2d Cir. 2016) (summary order) (finding that untimely or otherwise procedurally defective administrative grievances or appeals fail to satisfy PLRA's exhaustion requirements).

*Riles* is instructive. The Second Circuit found that the third *Ross* situation did not apply to plaintiff's situation, where he filed an initial grievance without including mandatory paperwork. *Id.* at 580. After being misled by the DOC staff that his assault by a corrections officer was not going to be investigated and after receiving threats of retaliation from prison officers, plaintiff nevertheless still filed a grievance. Under these facts, the Second Circuit concluded that plaintiff was "not deterred from exhausting; he simply did not exhaust in

---

[2]  Q:   When you were at Greenhaven and Clinton, did you file a written grievance or did you write to the superintend[e]nt.
    A:   Well, isn't that a grievance? I writing to the superintend[e]nt and that's what I did. That what I call a grievance, telling the superintendent, look, I have problems here and these are my problems. That's what I did.
    Kendall Dep. Tr. 24:25-25:3, ECF No. 110-1

[3] Kendall testified that he submitted the letter to the Superintendent the same day of his October 11 hearing with Officer Levine (Kendall Dep. Tr. 38:4-10). The letter of the date is October 16, 2011. *See* Am. Compl. (ECF No. 10) ¶19(C).

accordance with the procedures." *Id.* at 581. Similarly here, Levine's words did not prevent Kendall from attempting to grieve as Kendall submitted his procedurally improper grievance letter. Thus, Levine's words could not be said to interfere with Kendall's pursuit of relief.

In his supplemental affirmation in opposition to the motion, Kendall stated that he attempted to file a grievance form while in solitary confinement but that all of the prison officials whom he asked for a form ignored his requests. Kendall Opp'n Aff. ¶¶ 30-39. If so, this would qualify under *Ross*'s third exception. *See, e.g.*, *Correa v. Hastings*, No. 13 Civ. 05862, 2014 WL 6468985, at *12 n.10 (S.D.N.Y. Nov. 18, 2014 ) (listing cases where prison officers did not provide an inmate with the requested grievance forms as illustrative of when administrative remedies are unavailable). However, Kendall's affidavit is directly contradicted by his earlier deposition testimony, where he testified that he never asked any officer for a grievance form. Kendall Dep. Tr. 39:4-13. In fact, Kendall's affidavit seems purposely crafted to create factual issues that would meet the third exception under *Ross*.

It is "well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Bright v. Coca-cola Refreshments USA, Inc.*, 639 Fed. App'x 6, 8 (2d Cir. 2015) (quoting *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572–73 (2d Cir. 1991)); *see also Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."). For example, in *Ferraresso v. Town of Granby*, a false arrest and excessive force case, the district court disregarded a paragraph in plaintiff's affirmation where plaintiff stated that the officers ignored plaintiff's pleas to loosen the excessively tight

handcuffs because, when directly asked about the tightness of the handcuffs during the plaintiff's deposition, plaintiff did not state that the handcuffs were too tight or that he pleaded with the officers to loosen them. 646 F. Supp. 2d 296, 302 (D. Conn. 2009). Here, Kendall's affirmation in opposition to summary judgment sets out the ways he sought to obtain a grievance form from corrections staff. The affirmation directly contradicts his earlier deposition, where he testified that he never asked for a form, that he thought he needed to tell Officer Levine about his complaint, and that he grieved by writing a letter to the superintendent. Thus, the Court will not consider his affirmation. *See Bright*, 639 F. App'x at 8 (affirming district court's disregard of new affidavits submitted by plaintiffs detailing new incidents of employment discrimination when in earlier deposition testimony plaintiffs testified that they identified all the facts underlying their claims).

Accordingly, the Court concludes that Kendall has failed to establish a genuine dispute of material fact regarding the availability of administrative remedies at Fishkill.

Orleans

As with Fishkill, Kendall did not file a proper grievance. Kendall testified that he spoke with Inmate Grievance Resolution Committee ("IGRC") members about his claims in lieu of filing a grievance because he believed that was the proper procedure at Orleans. Kendall Dep. Tr. 44:23-45:7. However, Kendall admitted that he did not inquire about the need to file a written grievance. Kendall Dep. Tr. 47:12-20. Kendall's ignorance regarding the proper grievance procedure at Orleans does not change the fact that that those remedies were, nevertheless, available. *See Briscoe v. D'Agata*, 14-CV-7384, 2016 WL 3582121, at *7 (S.D.N.Y. June 28, 2016). Further, none of the three *Ross* unavailability exceptions apply here. Nothing in the record (excluding Kendall's affirmation) indicates that the correctional staff or

IGRC inmates misled Kendall into believing that filing a written grievance was not necessary. *See Smith v. City of New York*, No. 12 Civ. 3303, 2013 WL 5434144, at *25 (S.D.N.Y. Sept. 26, 2013) ("But his ignorance is not an excuse where he had access to [information] to learn about the grievance procedure, he was not incorrectly instructed about the grievance procedure, and prison officials did not do anything that objectively prevented him from availing himself of that procedure.").

As before, the Court will disregard Kendall's affirmation, where Kendall affirms that at Orleans he was denied a grievance form by staff, contradicting his earlier deposition testimony. Accordingly, the Court finds that Kendall has failed to exhaust his administrative remedies at Orleans.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

**SO ORDERED.**

Dated:  September 19, 2017
        New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**